2015 IL App (2d) 120471
No. 2-12-0471
Opinion filed May 6, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09-CF-505 |
| ZACHARY A. REYES, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Burke and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, the juvenile defendant, Zachary A. Reyes, was convicted of one count of first-degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2008)) and two counts of attempted murder with a firearm (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2008)). The defendant was sentenced to 97 years' imprisonment. On appeal, the defendant argues that the automatic transfer statute of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-130 (West 2008)) (also known as the excluded jurisdiction statute), which requires that certain juveniles be tried and sentenced as adults, is unconstitutional. The defendant also argues that, under the holding in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), the Illinois statutory sentencing scheme is unconstitutional as applied to him. We affirm.

¶ 2                                    BACKGROUND

¶ 3     On January 15, 2010, the then-16-year-old defendant was charged by indictment with 16 counts for offenses that occurred on December 20, 2009, when the victim, Jason Ventura, was killed. The first five counts alleged that the defendant committed first-degree murder of the victim by shooting him in violation of sections 9-1(a)(1) and 9-1(a)(2) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/9-1(a)(1), (a)(2) (West 2008)). The indictment also contained two counts of attempted murder with a firearm, one committed against Eduardo Gaytan and the other against Jorge Ruiz, in violation of section 8-4(a) of the Criminal Code (720 ILCS 5/8-4(a) (West 2008)). The other nine counts were either dismissed or nol-prossed prior to trial.

¶ 4     On August 18, 2011, the State filed a notice stating its intent to seek firearm add-ons of 15 years, 20 years, or 25 years to life pursuant to section 5-8-1 of the Unified Code of Corrections (730 ILCS 5/5-8-1 (West 2008)).

¶ 5     A jury trial commenced on January 23, 2012. The jury ultimately found the defendant guilty of first-degree murder and found that the defendant personally discharged the firearm that proximately caused the victim's death. The jury also found the defendant guilty of the two counts of attempted first-degree murder and found that the defendant personally discharged the firearm in both of those attempts.

¶ 6     On March 29, 2012, the defendant's motion for a new trial was denied and the trial court held a sentencing hearing. Following the hearing, the trial court sentenced the defendant to 45 years' imprisonment for first-degree murder. This sentence was the minimum 20-year sentence (see 730 ILCS 5/5-4.5-20(a) (West 2008) (providing range of 20 to 60 years)), plus a mandatory 25-year firearm enhancement (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2008) (add-on may be 25 years to natural life)). The trial court also sentenced the defendant to 26 years' imprisonment for

each attempted-murder conviction, each of which was the minimum 6-year sentence (730 ILCS 5/5-4.5-25(a) (West 2008) (providing range of 6 to 30 years)), plus a mandatory 20-year firearm enhancement (730 ILCS 5/5-8-1(a)(1)(d)(ii) (West 2008)). The trial court found that the defendant's first-degree-murder conviction required consecutive sentences pursuant to section 5-8-4(d)(1) of the Unified Code of Corrections (730 ILCS 5/5-8-4(d)(1) (West 2008)). The trial court therefore ordered all the sentences to run consecutively to each other. In total, the defendant was sentenced to 97 years' imprisonment, of which he must serve at least 89 years, making him first eligible for mandatory supervised release (MSR) at age 105. Following the denial of his motion to reconsider his sentence, the defendant filed a timely notice of appeal.

¶ 7                                    ANALYSIS

¶ 8     On appeal, the defendant argues that the automatic transfer statute (705 ILCS 405/5-130 (West 2008)), which requires that minors 15 years old or older charged with certain crimes be prosecuted and sentenced as adults, violates the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), as well as the due process clauses of both the United States Constitution (U.S. Const., amends. V, XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, § 2). The defendant further argues that his 97-year aggregate term of imprisonment is a *de facto* mandatory natural life term of imprisonment that is unconstitutional pursuant to *Miller*. We will address each argument in turn.

¶ 9     The defendant's first argument is that the automatic transfer statute violates the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution because it requires that juveniles charged with first-degree murder be automatically transferred to criminal court for trial and, if convicted, be sentenced as adults. The defendant notes that adult sentences and sentence enhancements, such as the mandatory firearm

enhancements (730 ILCS 5/5-8-1 (West 2008)), mandatory consecutive sentencing (730 ILCS 5/5-8-4 (West 2008)), and the "truth in sentencing" provisions (730 ILCS 5/3-6-3 (West 2008)), apply to juveniles who are prosecuted as adults. The defendant contends that the automatic transfer statute and the adult sentencing requirements do not take into account the inherent differences between juveniles and adults, specifically the attendant circumstances of youth.

¶ 10     We review *de novo* a challenge to the constitutionality of a statute. *People v. Luciano*, 2013 IL App (2d) 110792, ¶ 43. Further, we presume that statutes are constitutional. *People v. Vasquez*, 2012 IL App (2d) 101132, ¶ 53. Thus, a defendant challenging the constitutionality of a statute must establish its constitutional invalidity. *Id.* The eighth amendment protects both children and adults from cruel and unusual punishment. U.S. Const., amend. VIII; *Miller*, 567 U.S. at ___, 132 S. Ct. at 2463. The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The proportionate penalties clause is coextensive with the cruel-and-unusual-punishment clause of the eighth amendment. *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 54.

¶ 11     The defendant's first argument, as well as his other arguments that follow, are based on three United States Supreme Court decisions. In *Roper v. Simmons*, 543 U.S. 551, 568 (2005), the Supreme Court held that the eighth amendment barred capital punishment for juvenile offenders. In *Graham v. Florida*, 560 U.S. 48, 82 (2010), the Supreme Court held that a sentence of life without the possibility of parole violated the eighth amendment when imposed on juvenile offenders for crimes other than homicide. In *Miller*, the Supreme Court held that the eighth amendment prohibited "a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," even those convicted of homicide offenses. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469. *Miller* did not preclude a sentence of life without parole for

homicide offenders; it required only that the trial court first consider the special characteristics of young offenders, such as immaturity, impetuosity, and the failure to appreciate risks and consequences, before imposing such a sentence on a juvenile defendant. *Id.* at ___, 132 S. Ct. at 2468-69. The defendant contends that these cases are "rooted in scientific and common sense recognition that fundamental differences exist between children and adults[,] which must be considered when evaluating the constitutionality of adult sentences imposed on children." The defendant argues that, under our statutory scheme, the trial court has no opportunity to take a juvenile defendant's age or culpability into account and make an individualized determination as to whether adult punishment is appropriate.

¶ 12    The defendant acknowledges that, in *Pacheco*, the Fourth District Appellate Court held that the automatic transfer statute does not violate the eighth amendment or the proportionate penalties clause. *Pacheco*, 2013 IL App (4th) 110409, ¶¶ 55, 58; see also *People v. Salas*, 2011 IL App (1st) 091880, ¶¶ 66, 70 (the automatic transfer statute did not violate the eighth amendment or the proportionate penalties clause, because it did not impose a punishment; it merely specified the forum in which the defendant's guilt may be adjudicated); *People v. Jackson*, 2012 IL App (1st) 100398, ¶¶ 21, 24 (agreeing with *Salas*). The present defendant asks us to disregard this precedent.

¶ 13    However, subsequent to the filing of the defendant's briefs in this case, our supreme court issued its decision in *People v. Patterson*, 2014 IL 115102, which specifically rejected the same arguments raised by the defendant here. In *Patterson*, our supreme court held that the automatic transfer statute did not violate the eighth amendment or the proportionate penalties clause. *Id.* ¶ 106. The supreme court rejected the assertion that the resultant application of mandatory consecutive sentencing and truth in sentencing rendered the automatic transfer statute a sentencing statute. *Id.* ¶ 104. The court reasoned that the purpose of the automatic transfer

statute was not to punish a defendant; its purpose was to establish the relevant forum for the prosecution of a juvenile charged with one of five serious crimes. *Id.* ¶ 105. The court held that, because the automatic transfer statute failed to impose actual punishment, the defendant's eighth amendment challenge necessarily failed. *Id.* ¶ 106. The court also rejected the defendant's challenge based on the proportionate penalties clause because that clause was co-extensive with the eighth amendment's cruel-and-unusual-punishment clause. *Id.* Thus, our supreme court upheld the automatic transfer statute's constitutionality, and the defendant's first contention on appeal is without merit.

¶ 14 The defendant's next contention on appeal is that the automatic transfer statute violates the due process clauses of the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. Specifically, the defendant argues that, on its face, the automatic transfer statute denies due process of law "because it provides no mechanism by which a trial court can make an individualized determination as to whether the juvenile should be tried in criminal court and subjected to sentencing pursuant to statutes that were intended for adult offenders."

¶ 15 The defendant acknowledges that, nearly 30 years ago, in *People v. J.S.*, 103 Ill. 2d 395, 405 (1984), the Illinois Supreme Court found that the automatic transfer statute satisfied due process. The defendant argues that the viability of that holding is questionable in light of *Miller*, *Graham*, and *Roper*. However, our supreme court rejected this argument in *Patterson* as well. In *Patterson*, the court noted that it had found that the automatic transfer statute did not violate due process in *J.S.*, *id.*, and, later, in *People v. M.A.*, 124 Ill. 2d 135, 147 (1988). *Patterson*, 2014 IL 115102, ¶¶ 93-95. The court rejected the *Patterson* defendant's reliance on the eighth amendment analyses in *Roper*, *Graham*, and *Miller* to support his due process claims, noting that "a constitutional challenge raised under one theory cannot be supported by decisional law based

purely on another provision." *Id.* ¶ 97. The *Patterson* court held that *Roper*, *Graham*, and *Miller* did not provide a basis to reconsider its holding in *J.S. Id.* ¶ 98. Thus, here, the defendant's due process claim fails under *Patterson*.

¶ 16    The defendant's final contention on appeal is that his 97-year aggregate prison sentence is a *de facto* mandatory natural life term of imprisonment and is unconstitutional under *Miller*. The defendant notes that the truth-in-sentencing statute requires that he serve a little over 89 years of that term and that he will not be eligible for MSR until he is 105 years old. The defendant acknowledges that the *Miller* defendants were each sentenced to a single prison term of natural life without the possibility of parole but argues that his sentence is, in effect, the same, making it cruel and unusual punishment.

¶ 17    In arguing that his sentence is a *de facto* mandatory life term of imprisonment, the defendant relies on *People v. Thomas*, 150 Cal. Rptr. 3d 361 (Cal. Ct. App. 2012). In *Thomas*, the defendant, Dejon Satterwhite, a participant in drive-by shootings that occurred on August 13 and 14, 2004, was convicted of two counts of murder, three counts of attempted murder, and two counts of shooting at an occupied motor vehicle. *Id.* at 364-66. As a result of adult sentencing ranges, enhancements, and consecutive sentencing requirements, Satterwhite was sentenced to an aggregate prison term of 196 years to life. *Id.* at 364.

¶ 18    On review, Satterwhite argued that his sentence should be reversed and the cause remanded in light of *Miller*, which held that, in homicide cases, the imposition of a mandatory life sentence without the possibility of parole on juvenile offenders violated the eighth amendment. *Id.* at 380-81. The *Thomas* court held that Satterwhite's aggregate sentence of 196 years to life was the functional equivalent of a mandatory-life-without-parole sentence in violation of *Miller*. *Id.* at 382. The reviewing court therefore remanded the matter for resentencing so that the trial court could exercise its discretion in light of *Miller*. *Id.* at 383.

¶ 19 In arguing that the defendant's sentence is not unconstitutional, the State relies on *People v. Gay*, 2011 IL App (4th) 100009. In *Gay*, the defendant had accumulated 16 aggravated-battery convictions over a number of years while imprisoned, all as a result of behavior toward corrections officers. *Id.* ¶ 4. This resulted in 97 years of consecutive sentences. *Id.* The defendant filed a postconviction petition in a case involving one of the charges, arguing that his aggregated sentences were cruel and unusual as they amounted to a *de facto* life-without-parole sentence. *Id.* ¶ 19. The defendant contended that this violated *Graham* because, as a sufferer of mental illness, he belonged to a less culpable class of persons. *Id.*

¶ 20 The reviewing court determined that *Graham*'s ban on life-without-parole sentences for juvenile nonhomicide offenders applied to such sentences only when tied to a single conviction. It did not apply to the defendant's accumulation of sentences. *Id.* ¶ 23. The reviewing court further noted that it found unpersuasive the defendant's "unstated premise that, after he had accumulated some unspecified duration of consecutive prison sentences, the Constitution prohibited the State from punishing any further crimes defendant committed." *Id.* ¶ 24. The reviewing court held that the eighth amendment "allow[ed] the State to punish a criminal for each crime he commits, regardless of the number of convictions or the duration of sentences he has already accrued." *Id.* ¶ 25. Finally, the reviewing court found unpersuasive the defendant's comparison between juvenile defendants and mentally ill defendants. *Id.* ¶ 29. The reviewing court determined that there was no national consensus against punishing mentally ill persons as severely as others and that case law did not support a finding of lessened culpability of mentally ill offenders. *Id.*

¶ 21 *Gay* is clearly distinguishable from the present case. *Gay* did not involve a juvenile—the *Gay* court itself rejected the defendant's comparison between juvenile and mentally ill defendants—and the aggregate sentence was based on repeated offenses that took place over a

number of years. Nonetheless, the *Gay* court rejected the argument that *Graham* extended to an aggregate term-of-years sentence that was a "*de facto*" sentence of life without parole. *Id.* ¶ 23.

¶ 22 In *Patterson*, the defendant argued that the combination of the automatic transfer statute and the applicable sentencing statutes was unconstitutional as applied to him because, as a nonhomicide offender, he was less deserving of more serious forms of punishment. *Patterson*, 2014 IL 115102, ¶ 107. In rejecting this argument, our supreme court noted that both it and the United States Supreme Court have limited the application of the rationale expressed in *Roper*, *Graham*, and *Miller* to those cases involving "the most severe of all criminal penalties," namely, the death penalty or a sentence of life without parole. *Id.* ¶¶ 108, 110. The court found that "[a] prison term totaling 36 years for a juvenile who personally committed three counts of aggravated criminal sexual assault does not fall into that category." *Id.* ¶ 110. The court thus declined to extend the Supreme Court's eighth amendment rationale to the facts of that case. *Id.* Recently, in *People v. Cavazos*, 2015 IL App (2d) 120171, ¶ 99, this court held that *Miller* did not extend to the defendant's 75-year sentence, which was based on the aggregation of sentences for first-degree murder and attempted first-degree murder.

¶ 23 In the present case, the defendant was sentenced to an aggregate term of 97 years' imprisonment. As in *Patterson* and *Cavazos*, we decline to extend the eighth amendment rationale in *Miller* to the facts of this case. Once again, the defendant did not receive the most severe of all possible penalties, such as the death penalty or life without the possibility of parole. Rather, he received an aggregate term-of-years sentence. Unlike the *Miller* defendants, who were sentenced to life without parole based on single murder convictions, the present defendant received consecutive term-of-years sentences based on multiple counts and multiple victims. Here, the defendant was convicted of discharging a firearm that killed one person and attempting

to murder two others. Based on these distinguishing facts, the defendant's sentence does not violate *Miller*.

¶ 24     We acknowledge that there is a split of authority on this issue, as demonstrated by the defendant's reliance on *Thomas*. Compare *Thomas*, 150 Cal. Rptr. 3d at 382, *Bear Cloud v. State*, 2014 WY 113, ¶ 33, 334 P.3d 132 (Wyo. 2014) (extending *Miller* rationale to aggregate sentence that was the functional equivalent of life without parole), and *State v. Null*, 836 N.W.2d 41, 70-71 (Iowa 2013) (same), with *State v. Brown*, 2012-0872, pp. 14-15 (La. 5/7/13); 118 So. 3d 332 (holding that *Graham* did not preclude aggregate fixed-term sentence, based on multiple convictions, that exceeded the juvenile defendant's life expectancy), *Bunch v. Smith*, 685 F.3d 546, 552 (6th Cir. 2012) (holding that *Graham* did not apply to an 89-year sentence resulting from consecutive fixed-term sentences for multiple nonhomicide offenses), and *State v. Kasic*, 265 P.3d 410, 414-15 (Ariz. Ct. App. 2011) (holding that *Graham* was limited to sentences of "life without parole").

¶ 25     Nonetheless, we conclude that an expansion of the holding in *Miller* to the facts of this case would result in confusion and uncertainty. See *Bunch*, 685 F.3d at 552 (questioning what number of years might or might not constitute a *de facto* life sentence, whether race, gender, or socioeconomic status would have to be considered, and whether the number of crimes would matter). We recognize that, due to their inherent differences, there is an evolving trend to treat juvenile offenders differently from adult offenders. See *Cavazos*, 2015 IL App (2d) 120171, ¶ 96. Indeed, our supreme court or the United States Supreme Court may ultimately expand the *Graham* and *Miller* precedents to *de facto* life sentences. However, based on current precedent, including our supreme court's most recent pronouncement in *Patterson*, we decline to extend the rule in *Miller* to the facts in this case.

¶ 26                                          CONCLUSION

¶ 27    For the foregoing reasons, the judgment of the circuit court of Kendall County is affirmed.

¶ 28    Affirmed.