# Illinois Official Reports

## Supreme Court

---

### *In re A.A.*, 2015 IL 118605

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* A.A., a Minor (The People of the State of Illinois, Appellee, v. Matthew A., Appellant (Caitlin S., Appellee)). |
| Docket No. | 118605 |
| Filed | November 19, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Jefferson County, the Hon. Timothy R. Neubauer, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |
| Counsel on Appeal | Edwin J. Anderson and L. James Hanson, of Mt. Vernon, for appellant. |
| | Douglas R. Hoffman, State's Attorney, of Mt. Vernon (Patrick Delfino, Stephen E. Norris and Jennifer Camden, of the Office of the State's Attorneys Appellate Prosecutor, of counsel), for the People. |
| | E. Joyce Randolph, of Mt. Vernon, for appellee Caitlin S. |
| | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Diane M. Potts, Deputy Attorney General, of Chicago, of counsel), for *amicus curiae* Illinois Department of Healthcare and Family Services. |

Camilla B. Taylor and Kyle A. Palazzolo, of Chicago, and Omar Gonzalez-Pagan, of New York, New York, for *amicus curiae* Lambda Legal Defense and Education Fund, Inc.

Robert F. Harris, Kass A. Plain and Christopher Williams, of the Office of the Cook County Public Guardian, of Chicago, for *amicus curiae* Cook County Public Guardian.

Sharee S. Langenstein, of Murphysboro, for *amicus curiae* Family-PAC.

Winter D. Campanella, of Carterville, for *amicus curiae* Larry and Gloria H.

| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. |
| --- | --- |
| | Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal arises from an order of the circuit court of Jefferson County which granted a petition filed by the guardian *ad litem* (GAL) for the minor, A.A., to vacate a voluntary acknowledgement of paternity (VAP) signed by respondents Matthew A. and Caitlin S. with regard to A.A. The appellate court affirmed and held that after DNA testing established that Matthew was not the biological father of A.A., the trial court was not required to make a "best interests of the child" determination prior to granting the petition. 2014 IL App (5th) 140252. For the reasons that follow, we affirm.

¶ 2                          BACKGROUND

¶ 3    Following the birth of A.A. on April 26, 2013, Matthew and Caitlin signed a VAP pursuant to section 6(a) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/6(a) (West 2012)). Caitlin, A.A.'s mother, had been married to Jakob S., who signed a denial of paternity as to A.A.

¶ 4    On June 10, 2013, the State filed a petition for adjudication of wardship in juvenile court following an investigation by the Department of Children and Family Services (DCFS) into the conditions of the home where A.A. was living with Caitlin, Matthew, and Caitlin's three other children, J.S., A.S., and P.S. The State alleged neglect and injurious environment based upon inadequate supervision, lack of cleanliness in the home, and hygiene issues concerning the four children.

¶ 5    On June 13, 2013, the trial court entered an agreed order which awarded temporary custody of the four minors to the guardianship administrator of DCFS. At the same hearing,

the court ordered DNA testing to determine if Matthew or Jakob was the biological father of P.S.

¶ 6      On August 1, 2013, a status hearing was held without a court reporter present. The docket record entry sheet indicates that the trial court ordered DNA testing on that date to determine whether Matthew was the biological father of A.A. The record is silent on whose motion this DNA testing was ordered. At the time of the hearing, A.A. and P.S. had been placed together in one foster home while J.S. and A.S. were living together in another foster home.

¶ 7      On September 23, 2013, Kathy Bass, a DCFS representative, testified at a review hearing that Caitlin had identified Cort H., who had died the previous month, as the possible biological father of A.A. Bass testified that DNA testing of A.A. and Matthew would be done that day. The State informed the court that DNA testing indicated that Jakob was not the father of P.S.

¶ 8      On November 15, 2013, an adjudicatory hearing was held. Caitlin and Matthew were represented by the same attorney and Sean Featherstun appeared as the GAL for the four minors. At the hearing, DCFS representatives testified about troublesome conditions in the home, with the house and children being filthy and unkempt, and about the children being left alone on occasion. Matthew testified that he is the father of P.S., but unfortunately had learned that he was not A.A.'s father.

¶ 9      Following the adjudicatory hearing, the trial court found the State proved the allegations of neglect and injurious environment against Caitlin and Matthew. The trial court also ordered DNA testing to determine if Cort was A.A.'s biological father. Because Cort was deceased, this would be accomplished through DNA testing of Cort's parents, Gloria H. and Larry H. Thereafter, on January 21, 2014, the docket entry indicates that the court had been advised by Caitlin and Matthew's attorney that the couple "broke up." The docket entry further indicates that the court was advised that the DNA test results showed that Matthew was not the biological father of A.A. The trial court at that time appointed a separate attorney to represent Matthew.

¶ 10      On February 10, 2014, Gloria and Larry filed a petition to intervene, asserting that the DNA testing revealed that they are A.A.'s biological grandparents, and that if the court terminated the rights of A.A.'s parents, they desired to adopt A.A.

¶ 11      On February 18, 2014, a dispositional hearing was conducted. Guardianship of the four minors remained with DCFS, and a service plan for Caitlin and Matthew was put in place. On the same day, the GAL sought leave to file a petition to declare the nonexistence of a parent-child relationship between A.A. and Matthew and to vacate the VAP signed by Matthew and Caitlin. The GAL's motion was filed in family court and was consolidated with the neglect proceeding in juvenile court.

¶ 12      On February 21, 2014, the trial court allowed the GAL, over Matthew's objection, to file the petition to declare the nonexistence of a parent-child relationship. The trial court postponed consideration of Gloria and Larry's petition to intervene until the GAL's petition was decided. Although Matthew recognized that the GAL had standing to challenge the VAP on behalf of A.A., and that the DNA test results identified Cort as A.A.'s biological father, he advanced that it would not be in A.A.'s best interests to vacate the VAP. Matthew also filed a motion to dismiss Gloria and Larry's petition to intervene.

¶ 13    On March 17, 2014, a multiday hearing began on the GAL's petition. Caitlin testified that she knew Cort was A.A.'s father and that it contributed to their break up after he denied it. Caitlin was still married to Jakob when A.A. was conceived. She believed that someone had to acknowledge paternity before she could leave the hospital with A.A. Matthew signed the VAP after she was unable to reach Cort. Caitlin further testified that it was Matthew's intent to raise A.A. as his own. Caitlin admitted having some trouble with Gloria and Larry in the past, but felt they should take placement of A.A. if A.A. could not be with her. Caitlin testified that Matthew should not be considered A.A.'s father, stating that "there is no emotional attachment" and that although Matthew loves A.A., he still hates Cort. Caitlin acknowledged that Matthew provided financially for A.A. and assisted in parenting.

¶ 14    Matthew testified that he works full-time for a subcontractor of a tire company. He and Caitlin had been together for four years, including at the time when A.A. was conceived. He testified that they also have a biological son, P.S., who was born in 2011. He learned that Caitlin was seeing Cort during her pregnancy with A.A., but remained with her, including when A.A. was born. When Matthew signed the VAP he believed that he might be A.A.'s father. He further testified that A.A. and P.S. live in the same foster home and that he visits with both of them. A court appointed special advocate (CASA) volunteer testified that she had been assigned to A.A.'s case.[1] Although she had several meetings with Caitlin and Matthew, she only once observed Matthew with A.A. She witnessed "a lot of affection" between them. She testified that as long as Matthew continues services with DCFS he should remain as A.A.'s legal father.

¶ 15    Carrie Donnen, a caseworker with DCFS, testified that she worked with Caitlin and the family from January to June 2013 and had seen Matthew interact with A.A. on numerous occasions. She opined that it would not be in A.A.'s best interest to remove Matthew as his legal father.

¶ 16    On May 8, 2014, the trial court entered an order declaring the nonexistence of a parent-child relationship between Matthew and A.A. based on the DNA test results that established Cort was A.A.'s biological father. The trial court vacated the VAP and declared a parent-child relationship between Cort and A.A. The trial court subsequently granted the petition of Gloria and Larry to intervene and stayed further proceedings pending the disposition of Matthew's appeal.

¶ 17    The appellate court affirmed the order of the trial court and remanded for further proceedings. 2014 IL App (5th) 140252, ¶ 33. In doing so, the appellate court rejected Matthew's claim that the trial court was required to make a best interests of the child determination before granting the GAL's petition. See *id.* ¶ 30. The appellate court held that before the best interests standard can be applied to determine a parent's rights to custody, visitation, and support, the party must first be a parent. *Id.* Although the appellate court recognized that a man who signs a VAP is presumed to be the child's father, the DNA test results in this case established that Cort is A.A.'s father. *Id.* ¶ 31. The appellate court further recognized that establishing Cort as A.A.'s biological father will have future implications,

_____

[1]For privacy purposes, the CASA volunteer is identified in the record only by her first name, Amanda.

- 4 -

noting that A.A. should be able to receive social security benefits through his deceased father. *Id.* ¶¶ 31-32.

¶ 18   This court allowed Matthew's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2013). This court also allowed Lambda Legal Defense and Education Fund, Inc., and the Illinois Department of Healthcare and Family Services to file briefs *amici curiae* in support of Matthew. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). Additionally, we allowed Larry and Gloria, the Cook County Public Guardian, and the Family-PAC to file briefs *amici curiae* in support of A.A. *Id.*

¶ 19                                          ANALYSIS

¶ 20   The sole issue raised by Matthew for our review is whether a best interests of the child determination was required prior to the trial court granting the GAL's petition to declare the nonexistence of a parent-child relationship between Matthew and A.A.

¶ 21   This argument requires us to construe the Parentage Act. Statutory construction presents a question of law which we review *de novo*. *First American Bank Corp. v. Henry*, 239 Ill. 2d 511, 515 (2011). The primary objective of this court in construing a statute is to ascertain and give effect to the legislature's intent. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). The plain language of a statute is the most reliable indication of the legislature's intent. *In re Christopher K.*, 217 Ill. 2d 348, 364 (2005). Where the statutory language is clear and unambiguous, we will enforce it as written and will not read into it exceptions, conditions, or limitations that the legislature did not express. *Id.*

¶ 22   In enacting the Parentage Act, our legislature created a statutory mechanism that serves to legally establish parent and child relationships in Illinois. *J.S.A. v. M.H.*, 224 Ill. 2d 182, 198 (2007). Section 1.1 of the Parentage Act declares that the purpose of this statutory enactment is to further the public policy of Illinois to "recognize[ ] the right of every child to the physical, mental, emotional and monetary support of his or her parents under this Act." 750 ILCS 45/1.1 (West 2012). Pursuant to the Parentage Act, a father-child relationship may be established in a number of different ways: by presumption (750 ILCS 45/5(a) (West 2012)); by consent (750 ILCS 45/6 (West 2012)); or by judicial determination (750 ILCS 45/7 (West 2012)).

¶ 23   Relevant to the instant case, pursuant to section 6(a) of the Parentage Act, "[a] parent and child relationship may be established voluntarily by the signing and witnessing of a voluntary acknowledgement of parentage [by the biological mother and a man claiming to be the child's father]." 750 ILCS 45/6(a) (West 2012). Paternity established in that way has the full force and effect of a judgment entered under the Paternity Act. 750 ILCS 45/6(b) (West 2012). "A judicial or administrative proceeding to ratify paternity established in accordance with subsection (a) is neither required nor permitted." 750 ILCS 45/6(c) (West 2012). Here, it is undisputed that Matthew and Caitlin signed, in accordance with section 6(a), a VAP with regard to A.A. shortly after the child's birth on April 26, 2013.

¶ 24   Section 7 of the Parentage Act details the requirements for bringing an action to determine the existence of a parent and child relationship or, as in this case, declare the nonexistence of a parent and child relationship. 750 ILCS 45/7 (West 2012). Pursuant to section 7(b), "[a]n action to declare the non-existence of the parent and child relationship may be brought by the child, the natural mother, or a man presumed to be the father." 750

ILCS 45/7(b) (West 2012). If any party is a minor, the statute provides that he or she may be represented by his or her GAL. 750 ILCS 45/7(c) (West 2012). Consequently, section 7 of the Parentage Act specifically recognizes that a child, through his or her GAL, may challenge a VAP. That is what occurred here.

¶ 25    Section 11(a) of the Parentage Act then provides that in any action brought under section 7 to determine the existence of the father and child relationship or to declare the nonexistence of the parent-child relationship, the trial court is authorized to order genetic testing. 750 ILCS 45/11(a) (West 2012). "If the court finds that the conclusion of the expert or experts, as disclosed by the evidence based upon the tests, is that the alleged father is not the parent of the child, the question of paternity shall be resolved accordingly." 750 ILCS 45/11(f)(1) (West 2012). The parties before us do not dispute that the DNA test results established that Matthew is not the biological father of A.A. and that instead Cort is the biological father.

¶ 26    Matthew claims that the appellate court incorrectly minimized the significance of the best interests of the child determination under which the court and the GAL must act, and that the court failed to recognize the important interests of nonbiological parents. Matthew's arguments before this court, however, are not tied to *any* language in the Parentage Act.

¶ 27    We find the statutory language to be clear and unambiguous. An action brought under the Parentage Act on behalf of a minor to declare the nonexistence of a parent and child relationship does not provide for the court to consider the best interests of the child prior to granting the petition. We decline to read into the Parentage Act, as Matthew's argument would require us to do, language that is not expressed by the legislature. *In re D.L.*, 191 Ill. 2d 1, 9 (2000). Where a party's objections "pose what are essentially questions of policy [they] are more appropriately directed to the legislature than to this court." *Hayen v. County of Ogle*, 101 Ill. 2d 413, 420-21 (1984).

¶ 28    Matthew, in making his argument that he has parental rights that must be respected and not set aside based on genetics alone, primarily relies upon two cases from our appellate court, *In re Custody of C.C.*, 2013 IL App (3d) 120342, and *In re Parentage of G.E.M.*, 382 Ill. App. 3d 1102 (2008). In *C.C.*, the appellate majority, while not commenting on the parental status of the VAP father, stated that the parental rights of such an "adjudicated parent" do not become void because a child is not genetically linked to him. *C.C.*, 2013 IL App (3d) 120342, ¶¶ 63-64. In *G.E.M.*, the appellate court addressed the limits placed on the mother's right to challenge a VAP in the context of a VAP father who was not contesting his paternity and had been allowed to remain the legal father of the child. *G.E.M.*, 382 Ill. App. 3d at 1112-13. The facts of both appellate cases are distinguishable and do not shed light on whether a best interests determination is required prior to granting a minor's petition to extinguish a father-child relationship under section 7(b).

¶ 29    In contrast, our decision in *In re Parentage of John M.*, 212 Ill. 2d 253 (2004), is instructive and consistent with our holding today. In *John M.*, a biological father brought a petition under section 7(a) of the Parentage Act to establish a parent-child relationship between himself and a child born during the marriage of the mother to another man. *Id.* at 256. The presumed father from the marriage argued, among other claims, that there should be a best interests hearing prior to allowing the biological father's petition to proceed. *Id.* at 257.

¶ 30    In rejecting this argument, we recognized that legal determinations regarding the father-child relationship are governed by section 7 of the Parentage Act. *Id.* at 263. Therein, a

"father-child relationship may be established pursuant to section 7(a), or disestablished pursuant to sections 7(b) and 7(b-5)." (Emphases omitted.) *Id.* We explained that "a man alleging himself to be the biological father of a child has standing to bring an action to establish his relationship to the child, without regard to whether another man is already presumed to be the child's father pursuant to section 5(a) of the Act." *Id.* at 264. Additionally, "once a petition to establish parentage is filed with the court, the court, pursuant to section 11(a) of the Act, 'may, and upon request of a party shall, order or direct the mother, child and alleged father to submit to deoxyribonucleic acid (DNA) tests to determine inherited characteristics.' " (Emphasis omitted.) *Id.* (quoting 750 ILCS 45/11(a) (West 2002)). "If the results of paternity testing obtained pursuant to this section show that the presumed father is not the biological father, the presumption in section 5 is rebutted." *Id.*

¶ 31 This court in *John M.* specifically acknowledged that the Parentage Act "contains no express requirement that a court consider the best interests of the child before any testing is conducted or a legal determination of paternity is made." *Id.* Instead, the first step in the proceeding is to establish or disestablish parentage. This court further recognized that once parentage has been established, then the trial court is charged with the responsibility of deciding other issues which surround paternity, including custody and visitation, where the best interests of the child are of paramount concern. *Id.* at 264-65; see also 750 ILCS 45/14 (West 2012) (any decisions regarding custody and visitation "shall [be] determine[d] in accordance with the relevant factors set forth in the Illinois Marriage and Dissolution of Marriage Act and any other applicable law of Illinois, to guide the court in a finding in the best interests of the child").

¶ 32 Finally, we held in *John M.* that section 7(a) is not facially unconstitutional because it does not require a best interests determination before allowing a biological father to file a petition to declare the existence of a parent-child relationship where a presumed father already exists. *John M.*, 212 Ill. 2d at 270. In doing so, this court recognized that "when a best interests hearing is required prior to some action, it is for *the protection of the child*" and not of the rights of the presumed father. (Emphasis added.) *Id.*

¶ 33                                    CONCLUSION

¶ 34 For the above stated reasons, we conclude that the trial court was not required to make a best interests of the child determination prior to granting the GAL's petition to disestablish paternity between Matthew and A.A. The judgment of the appellate court is therefore affirmed.

¶ 35 Appellate court judgment affirmed.