2016 IL App (1st) 141500

FIFTH DIVISION
August 19, 2016

No. 1-14-1500

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 19490 |
| | ) | |
| DRASHUN WILSON, | ) | The Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Gordon and Burke concurred in the judgment and opinion.

**O P I N I O N**

¶ 1    Following a jury trial, defendant, Drashun Wilson, was found guilty of attempted first degree murder and aggravated battery with a firearm. The jury found that, during the attempted first degree murder, defendant personally discharged a firearm and proximately caused great bodily harm. Defendant was 17 years old at the time of the offense. He was subject to the 25-years-to-life firearm enhancement (720 ILCS 5/8-4(a), (c)(1)(D) (West 2012)) and was sentenced to the mandatory minimum 31 years' imprisonment. On appeal, defendant contends: (1) the newly enacted Public Act 99-69 (eff. Jan. 1, 2016) has retroactive application and entitles him to remand for a resentencing hearing; (2) the exclusive jurisdiction statute violates the eighth amendment; and (3) the 25-year mandatory firearm enhancement and truth-in-sentencing

provision violate the eighth amendment and proportionate penalties clause. Based on the following, we affirm.

¶ 2                                    FACTS

¶ 3    Briefly stated, the trial evidence demonstrated that, in the afternoon of September 23, 2012, defendant was with at least one other male near 59th Street and Wabash Avenue in Chicago, Illinois, when he raised a handgun and shot toward 59th Street. Defendant was wearing a blue Cubs jacket, a black skull cap, and blue jeans. At the time, Alvin Thomas was standing next to the alley adjacent to his apartment building located at 5927 South Wabash Avenue. Thomas observed the shooting. The State introduced video surveillance footage of the location and date in question. Thomas identified defendant as the individual on the video raising his hands and shooting, and then turning and running down the alley.

¶ 4    Floyd Fulton also testified that he was walking near 59th Street and Wabash Avenue at the time in question. When Fulton arrived at the alley of 59th Street, he observed "some little kids playing" in the alley. Fulton then observed an individual point at him. According to Fulton, he heard "bang, bang, bang" and saw "a little flash," so he ran down 59th Street toward Wabash Avenue. While running, Fulton felt something hot on his tongue and, after spitting an object out of his mouth, discovered that he was "bleeding compulsively." The police arrived minutes later and Fulton was transported to the hospital for treatment of a gunshot wound to the left cheek, which resulted in "comminuted fractures" of the middle and back corner of the sinus and skull bone.

¶ 5    Fulton was not able to identify the perpetrator of the offense, but Thomas positively identified defendant as the shooter during a show-up identification. Defendant was arrested and transported to the police station. A discharged bullet was recovered from the scene and

defendant's hands testified positive for gunshot residue. Defendant later provided an incriminating police statement.

¶ 6      Assistant State's Attorney Sarah Karr testified that defendant agreed to provide a typed statement. In his statement, defendant provided that, around 2:30 p.m. on September 23, 2012, he was with some friends in the neighborhood. He did not possess a weapon at the time; however, while they were walking in an alley near 59th Street and Wabash Avenue, someone named "Inkey" handed him a loaded handgun. As defendant walked down the alley, he observed an individual wearing all black pass the alley and "then c[o]me back and [start] looking down the alley at [defendant] and the group of people he was with." According to the statement, defendant was instructed by his friends to shoot the individual. Defendant stated that he had never shot a gun prior to the date in question, so he used both hands and aimed at the individual. Defendant shot the gun four times. Defendant stated that the individual ran, as did everyone in defendant's group. Defendant ran down the alley toward Wabash Avenue, at which point "he just threw the gun and kept going."

¶ 7      Defendant testified at trial that the typed police statement was false, denying any involvement in the shooting. Defendant acknowledged that, on the date in question, he was wearing a Cubs jacket and black skull cap. Defendant additionally acknowledged that the individual in the surveillance video also wore a Cubs jacket and black skull cap, but he denied that the individual in the video was him.

¶ 8      As stated, the jury found defendant guilty of attempted first degree murder, during which he personally discharged a firearm and proximately caused great bodily harm, and aggravated battery with a firearm. In subsequently sentencing defendant to the statutory minimum of 31

years' imprisonment on the attempted first degree murder count (the aggravated battery with a firearm count merged therein), the trial court stated that it considered:

> "the evidence at trial, the gravity of the offense, the presentence investigation report, the financial impact of incarceration, all evidence, information, and testimony in aggravation and mitigation, any substance abuse issues and treatment, the potential for rehabilitation, the possibility of sentencing alternatives, and all hearsay presented deemed relevant and reliable."

This timely appeal followed.

¶ 9                                          ANALYSIS

¶ 10                                    I. Public Act 99-69

¶ 11    Defendant first contends he is entitled to have his case remanded to the trial court for a resentencing hearing pursuant to the recently enacted Public Act 99-69. More specifically, defendant argues that Public Act 99-69, which became effective on January 1, 2016, should be applied retroactively to his case because its effective date was after his sentencing, but while his direct appeal was pending.

¶ 12    Public Act 99-69 provides:

> "(a) On or after the effective date of this amendatory Act of the 99th General Assembly, when a person commits an offense and the person is under 18 years of age at the time of the commission of the offense, the court, at the sentencing hearing conducted under Section 5-4-1, shall consider the following additional factors in mitigation in determining the appropriate sentence:

(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider the risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor.

(b) Except as provided in subsection (c) [relevant to first degree murder convictions], the court may sentence the defendant to any disposition authorized for the class of the offense of which he or she was found guilty as described in Article 4.5 of this Code, and may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession, possession with personal discharge, or possession with personal discharge that proximately causes great bodily harm, permanent

5

disability, permanent disfigurement, or death to another person." Pub. Act 99-69, § 10 (eff. Jan. 1, 2016).

¶ 13    The question before this court requires us to construe Public Act 99-69. The primary objective of statutory construction is to ascertain and give effect to the legislature's intent. *In re A.A.*, 2015 IL 118605, ¶ 21. The most reliable indicator of the legislature's intent is the plain language of the statute. *Id*. Where the statutory language is clear and unambiguous, this court will enforce it as written and will refrain from reading into it exceptions, conditions, or limitations not expressed therein. *Id.* Statutory construction presents a question of law, which we review *de novo*. *Id.*

¶ 14    In order to determine whether a statute may be applied retroactively, as opposed to prospectively, the Illinois Supreme Court has adopted the approach established by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 23 (citing *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38 (2001)). Our supreme court advised:

"Under *Landgraf*, if the legislature has clearly prescribed the temporal reach of the statute, the legislative intent must be given effect absent a constitutional prohibition. Where there is no express provision regarding the temporal reach, the court must determine whether applying the statute would have a 'retroactive' or 'retrospective' impact; that is, 'whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' [Citation.] Where there would be no retroactive impact, as defined in *Landgraf*, the court may apply the statute to the parties. [Citation.] However, if applying

the statute would have a retroactive impact, then the court must presume that the legislature did not intend that it be so applied. [Citation.]" *Hayashi*, 2014 IL 116023, ¶ 23.

¶ 15    Defendant argues that the language of Public Act 99-69 demonstrates the legislature's intent for a trial court to follow the newly outlined procedures at any sentencing hearing occurring on or after the effective date of the statute. Defendant contends that the statute does not place any temporal restrictions on the occurrence of the offense, so long as the defendant is sentenced in 2016 and was 17 years of age when the offense was committed. Because his case was pending on direct appeal and he was 17 years old at the time of the offense, defendant maintains that he is entitled to a new sentencing hearing.

¶ 16    After applying the *Landgraf* test to Public Act 99-69, we conclude that, based on its plain language, the legislature indicated a prospective application of the statute. The language of Public Act 99-69 demonstrated its temporal reach by stating, in relevant part, that "on or after the effective date," when an individual "commits an offense" and was under the age of 18 at the time it was committed, the sentencing court must consider the additional mitigating factors listed and could decline to impose any otherwise applicable firearm sentencing enhancement. Public Act 99-69 was filed on February 17, 2015, as House Bill 2471, and signed into law on July 20, 2015, with the effective date of January 1, 2016. See *Landgraf*, 511 U.S. at 257 ("[a] statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date"). Therefore, the statute provides that a sentencing court's application of the additional mitigating factors and discretion to decline imposition of an applicable firearm enhancement will take place when an individual that is under 18 years of age "commits" the offense on or after January 1, 2016. Contrary to defendant's

interpretation, the use of the present tense "commits" immediately following the temporal element demonstrates the legislature's intent that the statute apply to offenses committed after the effective date. *Cf. Hayashi*, 2014 IL 116023, ¶ 17 (term "has been convicted" demonstrated the legislature's intent that the statute apply to convictions occurring before the effective date). In sum, we find Public Act 99-69 solely applies prospectively and not retroactively.

¶ 17    Because we have concluded that the temporal reach of the statute was clearly demonstrated by the legislature, we need not turn to the alternative statutory sources suggested by defendant. Section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2012)), controls by default only in cases where the legislature has not clearly defined the temporal reach of the statute at issue. *Hayashi*, 2014 IL 116023, ¶ 24. In instances where the temporal reach is clearly indicated by the legislature, such as here, section 4 is inapplicable. *Id.* Similarly, the savings clause of the Civil Administrative Code of Illinois (20 ILCS 5/5-95 (West 2012)) is inapplicable to our analysis. *Hayashi*, 2014 IL 116023, ¶ 24.

¶ 18                                II. Constitutional Arguments

¶ 19    Defendant next contends the exclusive jurisdiction statute and application of the 25-year mandatory firearm enhancement and truth-in-sentencing provision to his sentence violate the eighth amendment and proportionate penalties clause where, as a 17-year-old, he was automatically tried and sentenced as an adult absent consideration of his youthfulness and its attendant circumstances.

¶ 20    The eighth amendment, which is applicable to the states through the fourteenth amendment (see *Robinson v. California*, 370 U.S. 660, 666 (1962)), provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const., amend. VIII. The eighth amendment, also known as the cruel and unusual

punishment clause, has been interpreted by the Supreme Court as prohibiting "inherently barbaric punishments" in addition to those that are disproportionate to the offense. *Graham v. Florida*, 560 U.S. 48, 59 (2010). In turn, article I, section 11, of the Illinois Constitution of 1970, also known as the proportionate penalties clause, provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

¶ 21                                  A. Exclusive Jurisdiction

¶ 22    Defendant argues that, pursuant to the United States Supreme Court decisions of *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham*, and *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), the Illinois exclusive jurisdiction statute applicable to his case (705 ILCS 405/5-120 (West 2012)) was cruel and unusual in violation of the eighth amendment.

¶ 23    Section 5-120 of the Juvenile Court Act of 1987 provided, at the relevant time[1]:

> "Exclusive jurisdiction. Proceedings may be instituted under the provisions of this Article concerning any minor who prior to the minor's 17th birthday has violated or attempted to violate, regardless of where the act occurred, any federal or State law or municipal or county ordinance, and any minor who prior to his or her 18th birthday has violated or attempted to violate, regardless of where the act occurred, any federal, State, county or municipal law or ordinance classified as a misdemeanor offense." 705 ILCS 405/5-120 (West 2012).

In other words, under the Illinois exclusive jurisdiction statute relevant to this case, 17-year-old felony offenders were excluded from the juvenile court system.

---

[1]This statute was amended effective January 1, 2014, to grant juvenile courts jurisdiction over any minor under the age of 18 who is charged with a felony.

¶ 24    The law is clear that a statute is presumed to be constitutional, and the party challenging it bears the burden of demonstrating its invalidity. *Hayashi*, 2014 IL 116023, ¶ 22. Moreover, where reasonably possible, we must construe a statute so as to affirm its validity and constitutionality. See *People v. Greco*, 204 Ill. 2d 400, 406 (2003). Whether a statute is constitutional raises a question of law, which we review *de novo*. *People v. Graves*, 207 Ill. 2d 478, 482 (2003).

¶ 25    As stated, defendant's argument is based primarily on *Roper*, *Graham*, and *Miller*. In *Roper*, the Supreme Court held that the eighth amendment bars capital punishment for juvenile offenders under the age of 18. *Roper*, 543 U.S. at 568. In reaching its conclusion, the Supreme Court identified the key differences between juveniles and adults, such that juveniles lack maturity and have an underdeveloped sense of responsibility, are more vulnerable to negative influences and outside pressures, and have a less developed character. *Id*. at 569-70. The Court stated that juveniles have a "diminished culpability" and, thus, the "penalogical justifications for the death penalty apply to them with lesser force than to adults." *Id*. at 571. Five years later, in *Graham*, the Supreme Court held that a sentence of life without the possibility of parole violates the eighth amendment when imposed on juvenile offenders who commit nonhomicide offenses. *Graham*, 560 U.S. at 74-75. The *Graham* Court found that life without parole is the "second most severe penalty permitted by law" (internal quotation marks omitted) and "improperly denies the juvenile offenders a chance to demonstrate growth and maturity." *Id.* at 69, 73. Finally, most recently in *Miller*, the Supreme Court held that the eight amendment prohibits a sentencing scheme that mandates life in prison without parole for juvenile offenders, even for those convicted of homicide offenses. *Miller*, 567 U.S. ___, 132 S. Ct. 2455. The Supreme Court reasoned that mandatory life without parole penalties "by their nature, preclude a sentencer from

taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id*. at ___, 132 S. Ct. at 2467. The Court added that "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id*. at ___, 132 S. Ct. at 2469.

¶ 26   Defendant argues that these three Supreme Court opinions demonstrate that the Illinois exclusive jurisdiction statute violated the eighth amendment where it automatically subjected all 17-year-old felony offenders to prosecution and sentencing as adults. Defendant acknowledges his argument was considered and rejected in *People v. Harmon*, 2013 IL App (2d) 120439, but he maintains that case was wrongly decided and lacks applicability to his case because *Harmon* was based on the automatic transfer statute for 15- and 16-year-old offenders and did not consider the imposition of the mandatory firearm enhancement or the truth-in-sentencing provision. Moreover, defendant argues that *Harmon* lacks binding precedential value because it is a Second District case. Defendant additionally acknowledges that in *People v. Patterson*, 2014 IL 115102, the Illinois Supreme Court rejected a challenge to the automatic transfer statute, concluding that neither the eighth amendment nor the proportionate penalties clause was implicated because the statute itself did not impose a penalty. Defendant maintains that, to the extent the *Patterson* holding can be applied to the exclusive jurisdiction statute, it was wrongly decided.

¶ 27   Keeping the presumptive constitutionality of the statute in mind and defendant's burden to demonstrate its invalidity, we conclude that the exclusive jurisdiction provision applicable to this case did not violate the eighth amendment. Similar to the reasoning employed in *Harmon*, we note that *Roper*, *Graham*, and *Miller* stand for the proposition that a sentencing body must have a chance to take into account mitigating circumstances, *i.e.*, a juvenile's age and the

attendant circumstances, before sentencing the juvenile to the "harshest possibility penalty." (Internal quotation marks omitted.) *Harmon*, 2013 IL App (2d) 120439, ¶ 54. Neither of the harshest possible penalties, *i.e.*, the death penalty and life imprisonment without the possibility of parole, were at issue in *Harmon* nor in this case. Moreover, the record shows that the trial court considered all of the factors in aggravation and mitigation, as well as the presentence investigation report and all evidence presented to the court prior to sentencing him to the statutory minimum prison term. The trial court, therefore, considered defendant's age and the attendant circumstances in fashioning his sentence. See *id.*

¶ 28　Furthermore, in *Patterson*, our supreme court rejected a similar eighth amendment challenge, albeit to the automatic transfer provision. The automatic transfer provision of the Juvenile Act allows 15 and 16 year olds who are charged with first degree murder and other violent crimes to be automatically tried in adult criminal court. 705 ILCS 405/5-130 (West 2012). In rejecting the defendant's eighth amendment and proportionate penalties claims and the defendant's reliance on *Roper*, *Graham*, and *Miller*, the supreme court found that the automatic transfer statute is not a sentencing statute, and that access to juvenile courts is not a constitutional right because the Illinois juvenile court system is a creature of the legislature. *Patterson*, 2014 IL 115102, ¶ 97. In addition, the *Harmon* court cited *People v. Salas*, 2011 IL App (1st) 091880, and *People v. Pacheco*, 2013 IL App (4th) 110409, both pre-*Patterson* cases, and found the reasoning that applied in those cases in holding the automatic transfer provision did not violate the eighth amendment, namely, that the provision is not subject to the eighth amendment because it does not impose a "punishment" but rather specifies the forum for adjudicating the defendant's guilt, applied with equal force to the exclusive jurisdiction provision. *Harmon*, 2013 IL App (2d) 120439, ¶ 55. We agree with *Harmon* that the reasoning of *Patterson* regarding the automatic

transfer provision equally applies to the exclusive jurisdiction provision where the two provisions have the same effect, namely, certain juveniles are automatically tried as adults. In other words, the exclusive jurisdiction provision is also procedural, in that it specifies the forum where a defendant will be tried. The challenged statute, therefore, does not impose punishment. As a result, defendant's eighth amendment challenge to the exclusive jurisdiction provision must fail.

¶ 29                    B. Automatic Imposition of Adult Sentencing Statutes

¶ 30    Defendant additionally contends that, as a result of the application of the exclusive jurisdiction provision, the automatic imposition of the adult firearm enhancement statute and the truth-in-sentencing provisions violated his eighth amendment rights and the proportionate penalties clause.

¶ 31                              1. Eighth Amendment

¶ 32    Pursuant to section 8-4(a), (c)(1)(D) of the Criminal Code of 2012 (Criminal Code), defendant was subject to a mandatory 25-years-to-life firearm enhancement. See 720 ILCS 5/8-4(a), (c)(1)(D) (West 2012). This enhancement was added to the Class X sentence of not less than 6 years and not more than 30 years. 730 ILCS 5/5-4.5-25(a) (West 2012). Additionally, the truth-in-sentencing statute applied to defendant, such that he was required to serve 85% of his sentence. 730 ILCS 5/3-6-3(a)(2)(ii) (West 2012).

¶ 33    In *People v. Miller*, 202 Ill. 2d 328, 336 (2002) (*Leon Miller*), our supreme court instructed that:

> "We have repeatedly recognized that the legislature has discretion to prescribe penalties for defined offenses. [Citation.] The legislature's discretion necessarily includes the power to prescribe mandatory sentences, even if these mandatory sentences restrict

the judiciary's discretion in imposing sentences. [Citation.] However, the power to impose sentences is not without limitation; the penalty must satisfy constitutional constrictions."

¶ 34    We are reminded that *Miller* merely stands for the proposition that the State cannot impose the mandatory penalty of life imprisonment without the possibility of parole on a juvenile without permitting the sentencing authority to take the defendant's youth and other attendant circumstances into consideration. *Miller*, 567 U.S. ___, 132 S. Ct. 2455. Illinois courts have repeatedly been asked to extend *Miller*'s prohibition on mandatory life sentences for juvenile offenders to mandatory term-of-years sentences imposed upon juveniles, even sentences of such length that they could arguably be described as *de facto* life sentences. Our courts consistently have rejected those requests. See *Patterson*, 2014 IL 115102, ¶¶ 107-11; *People v. Pace*, 2015 IL App (1st) 110415, ¶¶ 131-34; *People v. Reyes*, 2015 IL App (2d) 120471, ¶¶ 22-25, *appeal allowed*, No. 119271 (Ill. Sept. 30, 2015); *People v. Cavazos*, 2015 IL App (2d) 120444, ¶¶ 87-88; *People v. Banks*, 2015 IL App (1st) 130985, ¶¶ 20-24. The only contrary decisions appear to be *People v. Gipson*, 2015 IL App (1st) 122451, and *People v. Nieto*, 2016 IL App (1st) 121604.

¶ 35    For the reasons recited therein, we align ourselves with the decisions rejecting such an extension of *Miller*. Accordingly, until the Illinois or United States Supreme Court rules otherwise, we will continue to follow the line of cases limiting *Miller* to instances of mandatory life imprisonment without the possibility of parole. See *Pace*, 2015 IL App (1st) 110415, ¶ 134. In this case, the trial court had discretion to impose a sentence between 31 years and 55 years. As defendant concedes, his sentence did not amount to life imprisonment without the possibility of parole. We, therefore, conclude defendant failed to satisfy his burden of persuading this court

that his eighth amendment rights were violated when he was sentenced to the minimum of 31 years' imprisonment.

¶ 36   We note that, in enacting Public Act 99-69, the legislature has provided a means by which the trial court can consider the characteristics of juvenile offenders before subjecting them to adult criminal prosecution and sentencing. The creation of this new statute, however, does not render the firearm enhancement and truth-in-sentencing statutes unconstitutional.

¶ 37                              2. Proportionate Penalties Clause

¶ 38   We next consider defendant's argument that his sentence is unconstitutional under the proportionate penalties clause of the Illinois Constitution. There has been some debate regarding whether the proportionate penalties clause offers defendants greater protections than the eighth amendment. In *Pace*, this court considered the competing arguments and held, based on the relevant law, that, when a punishment has been imposed, the proportionate penalties clause provides greater protection. *Id*. ¶ 139. As a result, we will independently analyze whether defendant's sentence violates the proportionate penalties clause.

¶ 39   To succeed in a proportionate penalties claim, a defendant must show either that the penalty is degrading, cruel, "or so wholly disproportionate to the offense that it shocks the moral sense of the community," or that another offense containing the same elements has a different penalty. (Internal quotation marks omitted.) *Gipson*, 2015 IL App (1st) 122451, ¶ 69.

¶ 40   In *People v. Sharpe*, 216 Ill. 2d 481, 525 (2005), the supreme court found the firearm enhancement statute did not violate the proportionate penalties clause, explaining:

    "it would not shock the conscience of the community to learn that the legislature has determined that an additional penalty ought to be imposed when murder is committed

with a weapon that not only enhances the perpetrator's ability to kill the intended victim, but also increases the risk that grievous harm or death will be inflicted upon bystanders." While *Sharpe* did not involve the application of the firearm enhancement statute to a juvenile conviction of attempted murder, as in the case before us, it is relevant to note the supreme court has determined that subjecting defendants guilty of crimes involving firearms to substantial mandatory minimum sentences does not shock the moral sense of the community. See *Pace*, 2015 IL App (1st) 110415, ¶ 141.

¶ 41    Defendant argues that his sentence shocked the moral sense of the community where he was just over 17 years old at the time of the shooting, had no prior convictions, had a supportive family, had never shot a gun prior to the offense, and was peer pressured by friends to shoot the victim on the date in question. Defendant's argument primarily relies on *Leon Miller* and *Gibson* for support.

¶ 42    In *Leon Miller*, a juvenile defendant was sentenced to life without parole, which was found to violate the proportionate penalties clause because the sentence "grossly distort[ed] the factual realities of the case and [did] not accurately represent [the] defendant's personal culpability such that it shocks the moral sense of community." *Leon Miller*, 202 Ill. 2d at 341. In so finding, the Illinois Supreme Court determined that, when combined, the automatic transfer statute, the accountability statute, and the multiple-murder sentencing statute prevented the trial court from considering the actual facts of the crime, *i.e.*, the age of the defendant at the time of the offense and the defendant's culpability. *Id.* (identifying the defendant as "the least culpable offender imaginable," in that he was 15 years old at the time and agreed to serve as a lookout when approached by two individuals who, within one minute, open fired, killing two people). In *Gipson*, this court reversed a 52-year prison term of a juvenile defendant convicted of attempted

murder, finding the sentence violated the proportionate penalties clause because the sentence failed to consider the defendant's age and mental disorders. *Gipson*, 2015 IL App (1st) 122451, ¶ 75. The case was remanded with instructions to conduct a retroactive fitness hearing and, in the event the defendant was found fit to stand trial, he should be resentenced without applying the firearm enhancement. *Id.* ¶¶ 38, 69, 78.

¶ 43     We find *Leon Miller* and *Gipson* are distinguishable. *Leon Miller* and *Gipson* both limited their holdings to the facts of those cases. In fact, the supreme court did not announce a "blanket rule of law." *Pace*, 2015 IL App (1st) 110415, ¶ 145. Moreover, in this case, the evidence demonstrated that defendant did not act as a lookout, merely having one minute to contemplate his actions before the offense. Nor was there a question of defendant's mental fitness. Instead, the evidence demonstrated that defendant pursued the victim down an alley, raised his firearm, and shot at the victim four times before fleeing. Although there were certain mandatory aspects of defendant's sentence, namely, mandatory minimum sentencing and truth-in-sentencing, the trial court retained wide latitude to fashion a sentence. As previously discussed, the trial court exercised that discretion by sentencing defendant to the mandatory minimum of 31 years' imprisonment. Ultimately, we conclude that defendant's sentence in this case did not violate the proportionate penalties clause.

¶ 44     We are unpersuaded by defendant's reliance on an Iowa Supreme Court case finding that all mandatory minimum juvenile sentences are unconstitutional. See *State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014). The Iowa Supreme Court has interpreted *Miller* more broadly than our courts. The decisions of foreign courts are not binding on Illinois courts. See *People v. Reese*, 2015 IL App (1st) 120654, ¶ 70. Instead, we are required to follow our supreme court precedent,

which has interpreted *Roper*, *Graham*, and *Miller* to apply "only in the context of the most severe of all criminal penalties." *Patterson*, 2014 IL 115102, ¶ 110.

¶ 45                                CONCLUSION

¶ 46    Based on the foregoing, we find Public Act 99-69 does not apply to defendant's sentence, which we conclude was constitutional.

¶ 47    Affirmed.