# Illinois Official Reports

## Appellate Court

*Plowman v. Department of Children & Family Services*, 2017 IL App (1st) 160860

| | |
|---|---|
| Appellate Court Caption | MICHAEL PLOWMAN, Plaintiff-Appellant, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES and GEORGE H. SHELDON, in His Official Capacity as Acting Director of Children and Family Services, Defendants-Appellees. |
| District & No. | First District, Sixth Division Docket No. 1-16-0860 |
| Filed | July 28, 2017 |
| Rehearing denied | August 29, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-7703; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Bruce A. Slivnick, of Deerfield, for appellant. Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Janon E. Fabiano, Assistant Attorney General, of counsel), for appellees. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Delort concurred in the judgment and opinion.

**OPINION**

¶ 1      The plaintiff, Michael Plowman, appeals from an order of the circuit court of Cook County that affirmed a final administrative decision of the Department of Children and Family Services (DCFS) denying his request to expunge an indicated finding of neglect that was entered against him pursuant to the Abused and Neglected Child Reporting Act (Reporting Act) (325 ILCS 5/1 *et seq.* (West 2014)). On appeal, he contends that (1) DCFS exceeded its rulemaking authority in promulgating the regulation upon which its indicated finding of neglect was based, (2) the findings of the administrative law judge (ALJ) were against the manifest weight of the evidence, and (3) the ALJ's determination that he was neglectful was clearly erroneous. For the reasons that follow, we affirm.

¶ 2      The following factual recitation is taken from the pleadings, testimony, and exhibits of record.

¶ 3      The plaintiff and L.D., who were never married, are the parents of the minor children Mo. D., V.D., and Ma. D. (collectively, the children). On September 1, 2014, the plaintiff called DCFS and alleged that, a few days earlier, L.D. threw a knife at V.D. at the family's house in Chicago. Following an investigation, DCFS indicated the plaintiff for neglect based upon the existence of an environment injurious to the health and welfare of the children under allegation No. 60 from its regulations (89 Ill. Adm. Code 300.Appendix B, amended at 38 Ill. Reg. 13214 (eff. June 11, 2014)). The plaintiff filed an administrative appeal from that decision, and the matter proceeded to a hearing before an ALJ on February 27, 2015.

¶ 4      At the hearing, DCFS called Ida Lane, a child protection investigator; L.D.; and her niece, I.D. Lane testified that she interviewed L.D., Mo. D., V.D., Ma. D., and I.D. and wrote notes based upon each interview. During her testimony, she used her notes to refresh her memory and they were entered into evidence. Per Lane's notes and testimony, she met L.D. at the family's house in Chicago on September 2, 2014, and observed fingerprints around her neck, scratches on her neck and face, swelling, and bruising on her left upper arm, knees, and thighs. According to Lane, L.D. stated that the plaintiff arrived home drunk and attacked her in her bedroom on September 1 and also attacked her in the children's presence a few weeks earlier. She showed Lane where the plaintiff "slashed her mattress" and wrote phrases on the walls and furniture in the living room, dining room, kitchen, and her bedroom, including "[w]here were you last night," "[b]itch," "slut," and "whore." Lane testified that she took photographs of the writing, which were not produced at the hearing. During a subsequent interview, L.D. told Lane that V.D. imitated the plaintiff's conduct by throwing her possessions on the floor, pouring water on her clothing, and drawing on her bedroom ceiling.

¶ 5      Lane interviewed Mo. D., then age 12, at her school on September 2, 2014. According to Lane, Mo. D. stated that she "heard about abuse but [had] never seen it." However, Mo. D. also stated that she saw the plaintiff verbally abuse L.D. and "respond physically, usually after

[L.D.] has hit him." Mo. D. also told Lane that the plaintiff drank three days per week and wrote on the walls and furniture. Separately, Lane interviewed Ma. D., then age 5, and V.D., then age 11, at their schools on September 22, 2014. Ma. D. stated that the plaintiff wrote on the walls, often starts fights with L.D., and "hit[s] her sometimes but not that much." V.D. stated that his parents "argue all the time" but did "not really" fight.

¶ 6 Lane interviewed I.D., then age 15, by telephone on October 29, 2014. According to Lane, I.D. stated that, on at least six occasions in the summer of 2014, she observed the plaintiff call L.D. names, pull her hair, and hit her arms and face. I.D. explained that Mo. D., V.D., and Ma. D. each "witnessed their dad fight their mom" and that, on one occasion, the plaintiff got drunk, rubbed cat feces on L.D.'s bed, and wrote on the walls of her room. Lane's notes state that she spoke with Mo. D. a second time by telephone a few minutes after interviewing I.D. Mo. D. reiterated that the plaintiff drank several nights per week and that "she has seen lots of fights" in which the plaintiff struck L.D. first. According to Mo. D., the plaintiff grabbed L.D.'s neck, pulled her hair, and threw her into a wall when he was drunk.

¶ 7 Lane testified that, during her investigation, she did not observe any signs of abuse or neglect as to any of the children. At the conclusion of her investigation, she recommended that the plaintiff be indicated for neglect based upon "the domestic violence, the volatile relationship in the family," and "the children *** being pulled[ ] *** different ways."

¶ 8 L.D. testified that the plaintiff physically abused her on numerous occasions, damaged her possessions, and once "dumped water in my closet over my clothing." One day, in June 2014, when L.D. was in bed with her children and I.D., the plaintiff entered the bedroom, hit L.D. in the side while Mo. D. or Ma. D. was next to her, grabbed her throat, and punched a hole in the closet door. In July 2014, the plaintiff wrote messages on furniture in the living room and dining room, the walls of the kitchen and bathroom, and the walls, floor, ceiling, and door of L.D.'s bedroom. According to L.D., Mo. D. and I.D. were aware of the writing in the bedroom and knew that the plaintiff smeared cat feces on her bed and bedroom floor. L.D. acknowledged, however, that the children were not home when the plaintiff attacked her on September 1 and that she never pursued criminal charges against him. According to L.D., her children and I.D. lived at the family's house in Chicago at the time of the hearing but the plaintiff had forced her out.

¶ 9 I.D. testified that, during her interview with Lane, the telephone was on "speaker" mode and L.D. was "sitting next to me telling me what to say." I.D. denied telling Lane that she witnessed the plaintiff call L.D. names, that any of the children witnessed the plaintiff and L.D. fight, or that she was present during physical altercations. I.D. acknowledged, however, that, during the summer of 2014, she saw the phrase "[w]here did you sleep last night?" written on a vase in the dining room and that she saw the plaintiff write the same words on a bedroom wall. Mo. D. was present when the plaintiff wrote on the wall, but I.D. did not know whether she saw "what happened" and did not recall whether any of the children commented about the writing. I.D. denied seeing the plaintiff consume alcohol or smear cat feces on L.D.'s bed but stated that the plaintiff was the only person at the house when the incident occurred.

¶ 10 The plaintiff testified that the children witnessed L.D. attack him "on several occasions" but denied that he attacked her in the bedroom while the children were present, attacked her on September 1, slashed her mattress, forced her from the house, or drank excessively. He admitted that he wrote "[a]re you an asshole or a slut?" in L.D.'s bedroom, "[w]hy did you do exactly what you said you wouldn't do?" in the kitchen, and that he also wrote on furniture in

the living room and dining room. He testified that the writing in the kitchen was "cleaned up right away" and that he did not write the messages while he was drunk or while the children were present but stated that the children might have seen the writing in L.D.'s bedroom.

¶ 11 On April 6, 2015, the ALJ issued an opinion recommending that the plaintiff's request for expungement be denied. In her opinion, the ALJ reviewed the evidence adduced at the plaintiff's hearing and concluded that he "engaged in a repeated pattern of verbal abuse and domestic violence with [L.D.] in the presence of his children and his niece." The ALJ found that I.D.'s testimony lacked credibility because she appeared evasive, uncomfortable, and reluctant to testify, did not maintain eye contact, and her prior statements to Lane were corroborated by Mo. D., V.D., and Ma. D. According to the ALJ, even if L.D. had coached I.D. during the telephone interview, such circumstances "would still be evidence of the injurious environment in the home." The ALJ rejected the plaintiff's testimony and found that his allegations against L.D. did not "justify his behavior" or "diminish the significance of the violence in the home." The acting director of DCFS adopted both the ALJ's findings of fact and her recommendation that the plaintiff's request for expungement be denied.

¶ 12 The plaintiff timely filed a complaint for administrative review of the DCFS decision in the circuit court of Cook County. On February 24, 2016, the circuit court affirmed the DCFS decision. This appeal followed.

¶ 13 On appeal, the plaintiff first contends that DCFS exceeded its rulemaking authority by providing, in allegation No. 60 from its regulations (89 Ill. Adm. Code 300.Appendix B, amended at 38 Ill. Reg. 13214 (eff. June 11, 2014)), that domestic violence that is not directed against a child may establish an injurious environment for purposes of an indicated finding of neglect.

¶ 14 We briefly set forth the statutory and regulatory framework necessary to understand the plaintiff's argument on appeal. Under the Reporting Act (325 ILCS 5/1 *et seq.* (West 2014)), DCFS maintains a central register of all reported cases of suspected child abuse or neglect. 325 ILCS 5/7.7 (West 2014). When DCFS investigates a report of neglect, it must determine whether the report is "indicated," "unfounded," or "undetermined." 325 ILCS 5/7.12 (West 2014). A report is "indicated" if "an investigation determines that credible evidence of the alleged abuse or neglect exists." 325 ILCS 5/3 (West 2014). An indicated report must be entered in the central register. 325 ILCS 5/7.12 (West 2014).

¶ 15 A person who is subject to an indicated report, like the plaintiff, has the right to an administrative appeal and to request that the report be expunged. 325 ILCS 5/7.16 (West 2014). DCFS has the burden of proof in justifying its refusal to expunge the indicated report and must prove that a preponderance of the evidence supports the indicated finding. 89 Ill. Adm. Code 336.100(e) (2000). Following the hearing, the ALJ makes a recommendation to the DCFS director, who may accept, reject, amend, or return the recommendation. 89 Ill. Adm. Code 336.220(a) (2005). The director's decision is the final administrative decision, review of which is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)). 325 ILCS 5/11.6 (West 2014). Jurisdiction to review final administrative decisions is vested in the circuit court, from which a party may appeal to this court. 735 ILCS 5/3-104, 3-112 (West 2014). This court, however, reviews the decision of the agency and not the circuit court. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010).

¶ 16 In this case, DCFS indicated the plaintiff for neglect. Section 3 of the Reporting Act (325 ILCS 5/3 (West 2014)) defines a "neglected child" as one who, in relevant part, "is subjected to

an environment which is injurious insofar as (i) the child's environment creates a likelihood of harm to the child's health, physical well-being, or welfare and (ii) the likely harm to the child is the result of a blatant disregard of parent or caretaker responsibilities." *Id.* "Blatant disregard" refers to "an incident where the real, significant, and imminent risk of harm would be so obvious to a reasonable parent or caretaker that it is unlikely that a reasonable parent or caretaker would have exposed the child to the danger without exercising precautionary measures to protect the child from harm." *Id.* The statute lists four circumstances that cannot serve as the sole basis for a finding of neglect, namely: (1) the child's parent or caretaker "left the child in the care of an adult relative for any period of time"; (2) the child was "relinquished in accordance with the Abandoned Newborn Infant Protection Act" (325 ILCS 2/1 *et seq.* (West 2014)); (3) a parent or another person responsible for the child depends upon prayer for the treatment of disease; or (4) the child "is not attending school in accordance with the requirements of Article 26 of The School Code" (105 ILCS 5/26-1 *et seq.* (West 2014)). 325 ILCS 5/3 (West 2014).

¶ 17    Section 4 of the Children and Family Services Act (20 ILCS 505/4 (West 2014)) grants DCFS the authority "[t]o make all rules necessary for the execution of its powers." Pursuant to this authority, DCFS has promulgated rules for the enforcement and administration of the Reporting Act. See 89 Ill. Adm. Code 300. Relevant to this case, DCFS promulgated Appendix B, which describes the specific incidents of harm that must be alleged to have been caused by the acts or omissions identified in section 3 of the Reporting Act before DCFS will accept a report of child neglect. 89 Ill. Adm. Code 300.Appendix B, amended at 38 Ill. Reg. 13214 (eff. June 11, 2014). The regulations categorize the incidents of harm into numbered "allegations." The allegation at issue in this case, allegation No. 60, addresses the existence of an environment injurious to the health and welfare of children. *Id.*

¶ 18    Per the regulations, an injurious environment exists when "a child's environment creates a likelihood of harm to the child's health, physical well-being or welfare and *** the likely harm to the child is the result of a blatant disregard of parent or caretaker responsibilities." (Emphasis omitted.) *Id.* The regulations provide that "[t]his allegation shall be used when the type or extent of harm is undefined but the totality of circumstances, including inculpatory and exculpatory evidence, leads a reasonable person to believe that the child's environment may likely cause harm to the child's health, physical well-being or welfare due to the parent's or caretaker's blatant disregard." *Id.* This allegation also applies "when there are conditions that create a real, significant and imminent likelihood of harm to the child's health, well-being or welfare (i.e., domestic violence, intimidation ***) and the parent or caretaker blatantly disregarded his/her parental responsibility by failing to exercise reasonable precautionary measures to prevent or mitigate the imminent risk of moderate to severe harm." *Id.* To determine the existence of an injurious environment, the regulations include a nonexhaustive list of "circumstances that may create real, significant and imminent risk of moderate to severe harm." *Id.* These circumstances include, in relevant part, "situations that place a child at substantial risk of harm due to the effects of being subjected to participation or the witnessing of the use of physical force or restraint of another." *Id.*

¶ 19    Here, the plaintiff contends that section 3 of the Reporting Act (325 ILCS 5/3 (West 2014)) does not contemplate that domestic violence between adults constitutes an injurious environment for children and that, because allegation No. 60 "implicates domestic violence not involving *** children," the rule is void.

¶ 20    Initially, DCFS argues that the plaintiff waived his voidness challenge because he did not raise the issue during administrative proceedings. We disagree. An administrative agency "is a purely statutory creature and is powerless to act unless statutory authority exists." *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 31. As such, a decision entered by an agency that lacks the authority to act is void and may be attacked at any time. *Mitchell v. State*, 2016 IL App (1st) 141109, ¶ 19. Therefore, we consider whether allegation No. 60 from DCFS's regulations is void for exceeding the agency's authority to enforce and administer the Reporting Act.

¶ 21    "The scope of powers conferred on an administrative agency by its enabling legislation is a question of statutory interpretation which we review *de novo*." *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 20. The purpose of statutory interpretation is to determine the legislative intent, which is best demonstrated by the statutory language, given its plain and ordinary meaning. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. "Where a statute is ambiguous, *** courts will give substantial weight and deference to an interpretation by the agency charged with the administration and enforcement of the statute." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 132011, ¶ 20. When the legislature's intent is evident from the clear and unambiguous language of the statute, however, courts "will enforce it as written and will not read into it exceptions, conditions, or limitations that the legislature did not express." *In re A.A.*, 2015 IL 118605, ¶ 21.

¶ 22    Turning to section 3 of the Reporting Act, the statute unambiguously requires that two conditions must exist in order to support a finding that a child is neglected due to an injurious environment. First, the child must be subject to an environment that creates "a likelihood of harm to the child's health, physical well-being, or welfare." 325 ILCS 5/3 (West 2014). Second, the likely harm to the child must result from "a blatant disregard of parent *** responsibilities." *Id.* By its plain language, the Reporting Act identifies only four circumstances that cannot serve as a basis for a finding of neglect, namely, when the child is left in the care of an adult relative, the child is relinquished according to law, a parent depends upon prayer for the treatment of disease, or the child does not attend school in accordance with the School Code. *Id.* None of these exceptions apply in the present case, and living in an atmosphere of domestic violence is undoubtedly injurious to a child's welfare. Thus, the plain and unambiguous language of the statute refutes the construction proposed by the plaintiff, namely, that domestic violence between adults cannot result in an injurious environment that would support an indication of neglect. Such an interpretation would require this court to read into the Reporting Act a condition or limitation that the legislature did not express, which this court cannot do. See *In re A.A.*, 2015 IL 118605, ¶ 21. Therefore, we reject the plaintiff's reading of section 3 of the Reporting Act, and find that DCFS did not exceed its authority by providing, in allegation No. 60, that an injurious environment may exist where a child is subject to "substantial risk of harm due to the effects of being subjected to participation in or the witnessing of the use of physical force or restraint of another." 89 Ill. Adm. Code 300.Appendix B, amended at 38 Ill. Reg. 13214 (eff. June 11, 2014).

¶ 23    The plaintiff contends, however, that even if allegation No. 60 is not void, the ALJ's finding that he abused L.D. in the presence of their children was against the manifest weight of the evidence. More specifically, he argues that Lane lacked credibility because her reliance on her notes while testifying revealed that she did not independently recall her investigation. The plaintiff observes that Lane did not produce photographs that she claimed to have taken of the

writing on the walls of the house and argues that she exhibited bias against him by failing to adequately investigate his allegations against L.D. Additionally, he submits that Lane's account of her telephone interview with I.D. is "inherently suspect" due to I.D.'s testimony and Lane's failure to recognize that L.D. coached her answers during the interview. As Lane's telephone interview with Mo. D. occurred minutes later, the plaintiff maintains that L.D. also coached Mo. D. and, therefore, her statements from that interview are similarly unreliable.

¶ 24    In raising these arguments, the plaintiff essentially asks us to substitute our judgment for that of the trier of fact by reweighing the evidence and drawing our own conclusion as to the credibility of the witnesses. That is not the function of this court, however, as it is the province of the administrative agency to determine the credibility of witnesses and resolve conflicts in the evidence. See *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 540 (2006). The findings and conclusions of an administrative agency on questions of fact are held to be *prima facie* true and correct and will not be disturbed on review unless they are against the manifest weight of the evidence, *i.e.*, the opposite conclusion is clearly evident. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50; 735 ILCS 5/3-110 (West 2014).

¶ 25    The record before us contains ample evidence supporting the ALJ's finding that the plaintiff abused L.D. in the presence of their children. L.D. testified that, when she was in bed next to the children, the plaintiff hit her in the side, grabbed her throat, and punched a hole in the closet door. Lane testified that Mo. D. saw the plaintiff verbally abuse L.D., grab her neck, pull her hair, and throw her into a wall when he was drunk. Although, as the plaintiff notes, Ma. D. did not identify L.D. by name when she told Lane that the plaintiff hit a female, Ma. D. also stated that the plaintiff started fights with L.D. and, like Mo. D., knew that he wrote on the walls. Moreover, Lane testified that I.D. stated that Mo. D., V.D., and Ma. D. each "witnessed their dad fight their mom." Although I.D.'s testimony at the hearing contradicted her statements to Lane, the ALJ determined that her testimony lacked credibility due to her evasive demeanor and the fact that her earlier statements were corroborated by the children. The ALJ made her findings of fact after receiving all the evidence and observing the witnesses, and it is well-established that " '[c]onflicts in witness testimony do not constitute a sufficient reason to reverse an administrative agency's decision, since the agency's responsibility is to resolve the conflicting evidence.' " *Orsa v. Police Board*, 2016 IL App (1st) 121709, ¶ 47 (quoting *Collura v. Board of Police Commissioners*, 135 Ill. App. 3d 827, 839 (1985)). In this case, the ALJ performed just this task and the record demonstrates that her findings were not against the manifest weight of the evidence.

¶ 26    Notwithstanding, the plaintiff asks this court to take judicial notice of a March 2015 order from the circuit court of Cook County that granted him "physical custody" of the children, which, he argues, establishes that the ALJ's findings were against the manifest weight of the evidence. Section 3-110 of the Administrative Review Law (735 ILCS 5/3-110 (West 2014)), however, provides that "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the [reviewing] court." As the record does not establish that this evidence was before the ALJ, the plaintiff's reliance on it is unavailing and does not negate other evidence establishing that he abused L.D. in the presence of their children.

¶ 27    The plaintiff lastly contends that the ALJ incorrectly determined that his conduct constituted neglect. This argument involves an examination of the legal effect of a given set of

facts and, therefore, presents a mixed question of fact and law. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Mixed questions of fact and law are reviewed under a " 'clearly erroneous' " standard, and an agency's decision will be deemed clearly erroneous "only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). This standard of review "is significantly deferential to an agency's experience in construing and applying the statutes that it administers." *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 143 (2006).

¶ 28    As discussed *supra*, section 3 of the Reporting Act provides, in relevant part, that a child is neglected when "(i) the child's environment creates a likelihood of harm to the child's health, physical well-being, or welfare and (ii) the likely harm to the child is the result of a blatant disregard of parent or caretaker responsibilities." 325 ILCS 5/3 (West 2014). Pursuant to allegation No. 60 from DCFS's rules and regulations (89 Ill. Adm. Code 300.Appendix B, amended at 38 Ill. Reg. 13214 (eff. June 11, 2014)), an injurious environment exists when, *inter alia*, the child's environment puts him or her "at substantial risk of harm due to the effects of being subjected to participation in or the witnessing of the use of physical force or restraint of another." In determining whether a report is justified, the regulations require, in relevant part, consideration of the child's age, the frequency and severity of the occurrence, the stresses or crises in the home, and "[t]he precautionary measures exercised by a parent or caregiver to protect the child from harm." *Id.* The regulations provide that "[o]ne factor alone may present sufficient danger to justify taking the report." *Id.*

¶ 29    The plaintiff argues that the ALJ's determination of neglect was clearly erroneous because the record contains no evidence that "circumstances in the house" were likely to harm the children or that he put them at risk by disregarding his parental responsibilities. We disagree. The ALJ found that the plaintiff struck L.D. while Mo. D. or Ma. D. was beside her and that the children were aware that he wrote crude messages to L.D. throughout the house. L.D. testified that Mo. D. knew that the plaintiff smeared cat feces on her bed and bedroom floor, and told Lane that V.D. imitated the plaintiff's conduct by throwing her possessions on the floor, pouring water on her clothing, and drawing on her bedroom ceiling. Due to the frequency, severity, and pervasiveness of the plaintiff's abuse of L.D. and the children's young age when they were exposed to that abuse, the ALJ could reasonably find that their home environment would likely harm their well-being. Moreover, although the plaintiff testified that he erased some of the messages that he wrote throughout the house and denied abusing L.D. in the children's presence, the ALJ rejected his testimony and could reasonably find that his repeated failure to insulate the children from the injurious environment constituted a blatant disregard of his parental responsibilities. Thus, giving due deference to DCFS's experience and expertise, we cannot say, in light of the entire record, that the agency clearly erred in determining that the children were neglected for purposes of section 3 of the Reporting Act (325 ILCS 5/3 (West 2014)).

¶ 30    For all the foregoing reasons, we affirm the order of the circuit court which confirmed the decision of DCFS to deny the plaintiff's request to expunge the indicated finding of neglect entered against him.

¶ 31    Affirmed.